UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FADY FAYAD,

        Plaintiff,

v.

KATHLEEN SEBELIUS, Secretary,
UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
et. al.,

        Defendants.

_____/

Case No. 09-14119
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 25, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the parties' cross motions for summary judgment [dkts 18 & 21]. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Plaintiff's motion for summary judgment [dkt 18] is DENIED, and Defendants' motion for summary judgment [dkt 21] is GRANTED.

## II. BACKGROUND

In 2007, Plaintiff was licensed by the Sate of Michigan to practice medicine. On July 26, 2007, Plaintiff pled guilty to one count of Conspiracy to Defraud the United States, 18 U.S.C. § 371, for submitting six federal immigration forms falsely certifying that applicants for naturalized United States citizenship had physical or mental disabilities. In December 2007, Plaintiff submitted an updated Medicare enrollment application to the Wisconsin Physician Service Insurance Corporation ("WPS"), which was acting as an agent of the Center for Medicare and Medicaid Services ("CMS").[1] In his updated enrollment application, Plaintiff reported his felony conviction for Conspiracy to Defraud the United States.

On March 15, 2008, WPS notified Plaintiff that his Medicare enrollment billing privileges were being revoked based on 42 C.F.R. § 424.535, which authorizes the revocation of billing privileges where, within the last ten years, a provider or supplier has been "convicted of a Federal or State felony offense that CMS has determined to be detrimental to the best interests of the program and its beneficiaries."[2]

Plaintiff filed a Revocation Reconsideration Request with WPS on May 9, 2008. On July 22, 2008, a contractor Hearing Officer for WPS found, after quoting 42 C.F.R. § 424.535(a)(3) in full, that WPS properly revoked Plaintiff's Medicare billing privileges based on "information presented in . . . case documents that [Plaintiff] w[as] convicted, within 10 years preceding the

---

[1] Medicare provides health insurance benefits to individuals age sixty-five and older and to certain persons with disabilities. CMS, as a component of the Department of Health and Human Services, administers Medicare and delegates certain program functions to private insurance companies such as WPS.

[2] WPS mistakenly referenced 42 C.F.R. § 424.535(3) in its letter to Plaintiff, instead of the correct applicable statute, 42 C.F.R. § 424.535(a)(3).

revalidation of [his] Medicare enrollment, of a Federal felony offense."

On September 19, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), who affirmed the revocation by decision dated January 13, 2009. On March 11, 2009, Plaintiff requested Departmental Appeals Board ("DAB") review. On August 18, 2009, the DAB issued its final decision, affirming the ALJ's decision and upholding the revocation. The DAB's decision became the final decision of Defendant Secretary of the United States Department of Health and Human Services ("Secretary") subject to review by this Court.

While difficult to ascertain from Plaintiff's briefing, it appears that Plaintiff now challenges the revocation of his Medicare billing privileges on three grounds: (1) the Secretary erred in determining that Plaintiff's felony conviction was detrimental to the best interests of the Medicare program; (2) the delegation of power to WPS to make the initial determination that Plaintiff's felony was detrimental to the best interests of the Medicare program was unlawful; and (3) Plaintiff was denied due process because his billing privileges were revoked without a pre-revocation hearing. Plaintiff raised each of these arguments with both the ALJ and the DAB. While the ALJ concluded that it lacked authority to decide Plaintiff's constitutional arguments or determine whether Plaintiff's felony was in fact detrimental to the best interests of the Medicare program, the DAB rejected each of Plaintiff's arguments.

### III. LEGAL STANDARD

**A. Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its

3

assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## B. Review of the Secretary's Decision

As the parties agree, review of the Secretary's final decision is governed by 42 U.S.C. § 405(g).[3] Section 405(g) provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing," and that "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive."

Section 405(g) also provides that a court must affirm the Secretary's decision "absent a determination that the [Secretary] failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations omitted). "The substantial evidence

---

[3]Although his complaint separately relies on the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, Plaintiff concedes that the governing standard of review is found at 42 U.S.C. § 405(g). Plaintiff does not mention the APA in any of his briefs.

standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts." *Id.* at 281–82 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted)). The Secretary's decision is not "subject to reversal merely because substantial evidence exists in the record to support a different conclusion" if it is supported by substantial evidence.

## IV.  ANALYSIS

### A.  Secretary's Decision to Revoke Billing Privileges

An agency's interpretation of the statutes it is charged with administering is entitled to deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 866 (1984) (stating that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency" and must sustain the agency's interpretation so long at it is "based on a permissible construction of the statute"). Moreover, where an agency's interpretation of its own regulation is at issue, as is the case here, the Court's review is highly deferential. *See Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 408–09 (6th Cir. 2007) ("[R]eview of an agency's interpretation of its own regulations is highly deferential.") (citations omitted).

Under 42 C.F.R. § 424.535(a)(3), CMS may revoke a currently enrolled provider or supplier's Medicare billing privileges if the provider or supplier, "within the 10 years preceding enrollment or revalidation of enrollment, was convicted of a Federal or State felony offense that CMS has determined to be detrimental to the best interests of the program and its beneficiaries. 42 C.F.R. § 424.535(a)(3) also provides that offenses include:

> (A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted,

5

> including guilty pleas and adjudicated pretrial diversions.
>
> (B) Financial crimes, such as extortion, embezzlement, income tax evasion, insurance fraud and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.
>
> (C) Any felony that placed the Medicare program or its beneficiaries at immediate risk, such as a malpractice suit that results in a conviction of criminal neglect or misconduct.
>
> (D) Any felonies that would result in mandatory exclusion under section 1128(a) of the Act.

42 C.F.R. § 424.535(a)(3)(i)(A)–(D).

Here, there is no dispute that Plaintiff was convicted of a felony offense within ten years prior to his updated Medicare enrollment application. Rather, Plaintiff disputes the determination that his offense was detrimental to the best interests of the Medicare program. Plaintiff argues that this determination was erroneous because his felony conviction for Conspiracy to Defraud the United States does not fall within any of the offenses listed in 42 C.F.R. § 424.535(a)(3)(i)(A)–(D), noting that his crime was not "financial" in nature because he did not benefit financially from the crime.

Plaintiff cites *Ahmed v. Sebelius*, 710 F. Supp. 2d 167 (D. Mass. May 10, 2010), for the following propositions: (1) the decision to revoke billing privileges must be based on the offenses provided in 42 C.F.R. § 424.535(a)(3)(i)(A)–(D), and (2) to constitute a financial crime under 42 C.F.R. § 424.535(a)(3)(i)(B), an offense must have financial implications.

In *Ahmed*, the plaintiff argued that CMS improperly revoked his Medicare enrollment and billing privileges based on the erroneous conclusion that his conviction for obstructing a health care fraud investigation constituted a financial crime under 42 C.F.R. § 424.535(a)(3)(i)(B). *Ahmed*, 710

F. Supp. 2d at 173. The *Ahmed* court affirmed the revocation because the plaintiff's crime involved the forfeiture of $2.9 million to the federal government, which had "financial implications." *Id.* at 174–75. However, Plaintiff reads too much into *Ahmed*; nowhere did the court state that CMS is limited to considering the offenses listed in 42 C.F.R. § 424.535(a)(3)(i)(A)–(D), and the court's review was limited to the determination that the plaintiff's offense constituted a financial crime under 42 C.F.R. § 424.535(a)(3)(i)(B). The *Ahmed* court also specified that "the broad catchall for any 'felony offense that CMS has determined to be detrimental to the interests of the program and its beneficiaries,' 42 C.F.R. § 424.535(a)(3), could arguably be read to provide a basis for revocation on its own without addressing the particularized offenses which 'include' (but are not necessarily limited to) such offenses as those comprising § 424.535(a)(3)." 710 F. Supp. 2d at 173, n.9.

Moreover, the regulation's directive that offenses "include" those listed in 42 C.F.R. § 424.535(a)(3)(i)(A)–(D) is reasonably read as providing illustrative examples of a general proposition, rather than precluding unmentioned items. *See Puerto Rico Mar. Shipping Auth. v. ICC*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981) ("It is hornbook law that the use of the word 'including' indicates that the specified list . . . that follows is illustrative, not exclusive."). Thus, Plaintiff has failed to demonstrate that only those offenses listed in 42 C.F.R. § 424.535(a)(3)(i)(A)–(D) may provide the basis for determining that an offense is detrimental to the best interests of the Medicare program. Thus, the fact that the crime of Conspiracy to Defraud the United States is not listed among the offenses in 42 C.F.R. § 424.535(a)(3)(i)(A)–(D) does not render the Secretary's decision erroneous.

Considering the record as a whole, the Secretary's interpretation of 42 C.F.R. § 424.535 was neither plainly erroneous nor inconsistent with the regulation. Plaintiff deliberately falsified federal

immigration forms with respect to the medical conditions of alien applicants in order to allow such applicants to evade federal immigration laws. As Defendants point out, a large percentage of Medicare claims are initially paid on the basis of nothing more than the signature of a treating physician. Given Plaintiff's dishonesty and demonstrated untrustworthiness in his dealings with the federal government, the Secretary reasonably concluded that Plaintiff's continued participation in the Medicare program was contrary to the best interests of that program.

Accordingly, the determination to revoke Plaintiff's Medicare billing privileges was based on a reasonable interpretation of 42 C.F.R. § 424.535, and it is supported by substantial evidence in the administrative record as a whole.

**B. Delegation of Authority to WPS**

Plaintiff also contends that WPS, as a private contractor, lacked a valid delegation of authority from the Secretary or CMS to make the initial revocation determination. Plaintiff asserts that the Secretary has authority to determine which offenses are detrimental to the best interests of the Medicare program pursuant to the Medicare Act, 42 U.S.C. § 1395u(h)(8), and that CMS is given this authority by delegation pursuant to 42 C.F.R. § 424.535(a)(3). According to Plaintiff, since neither the Medicare Act nor the Federal Register explicitly authorize contractors such as WPS to make the initial determination of whether an offense is detrimental to the best interests of the Medicare program, WPS lacked authority to do so.

However, the Court finds that Plaintiff's assertions that WPS lacked authority to make the initial determination is contrary to provisions of the Medicare Act. Section 1842(a) of the Medicare Act, 42 U.S.C. § 1395u(a), states that "[t]he administration . . . shall be conducted through contracts with medicare administrative contractors under section 1874A." Section 1874A(a)(1), 42 U.S.C.

§ 1395kk–1(a)(1), states that "[t]he Secretary may enter into contracts with any eligible entity to serve as a medicare administrative contractor with respect to the performance of any or all of the functions described in" Section 1874(a)(4). The statute defines "medicare administrative contractor" to include any "agency, organization, or other person with a contract under this section," without regard to whether that agency, organization, or person is private or public. 42 U.S.C. § 1395kk–1(a)(3)(A). The "functions" described in Section 1874(A) include "determining . . . the amount of the payments required pursuant to this title to be made to providers of services, suppliers and individuals" and "*performing such other functions . . . as are necessary to carry out the purposes of this title*." (emphasis added).

As Defendants point out, one of the primary purposes of Medicare is to promote beneficiary access to high-quality medical care while preventing fraudulent suppliers from providing items or services to Medicare beneficiaries or billing the Medicare program or its beneficiaries. 71 Fed. Reg. 20754. Thus, the Secretary reasonably concluded "that revoking the billing privileges of a Medicare supplier is a program function that is 'necessary to carry out the purposes' of the Medicare program and thus may be lawfully delegated to a Medicare contractor pursuant to section 1874(A)." *Cf. United States v. William Spain*, 825 F.2d 1426, 1428 (1987) (holding that the authority granted to the Attorney General under the Controlled Substances Act to temporarily categorize a drug as a Scheduled I drug was unlawfully delegated to the Drug Enforcement Administration where the decision to categorize was "a standard especially within the expertise of the Attorney General and his immediate staff").

Furthermore, Plaintiff's claim before this Court challenges the final decision of the Secretary, as set forth in the DAB decision, who exercised ultimate review authority over WPS's issuance of

the revocation determination. *See The Ocean Conservancy v. Evans,* 260 F. Supp. 2d 1162, 1183 (M.D. Fla. 2003) (holding that there was no unlawful delegation by a federal agency to a private party where the federal agency "retained sufficient final reviewing authority over the findings of the independent scientific panel" so as not to violate federal law); *Nat'l Park & Conservation Ass'n v. Stanton*, 54 F. Supp. 2d 7, 19 (D.D.C. 1999) (holding that a delegation by a federal agency to a private entity is lawful "so long as the federal agency or official retains final reviewing authority"); *United Black Fund, Inc. v. Hampton*, 352 F. Supp. 898, 904–05 (D.D.C. 1972) (holding that no unlawful delegation of authority had occurred because the federal agency retained authority to review policies to ensure that they met federal requirements). As discussed *supra*, the Secretary's revocation of billing privileges was reasonable and based on substantial evidence in the administrative record.

Finally, the Court rejects Plaintiff's argument that the delegation of authority to WPS was improper because WPS "is an interested party in this matter" in that its business risks are arguably reduced if a decision is made to revoke Medicare billing privileges. In *Schweiker v. McClure*, the Supreme Court held that contractor hearing officers for private contractors like WPS are presumed to be unbiased because they function in a quasi-judicial capacity, and that the presumption can only "be rebutted by a showing of conflict of interest or some other specific reason for disqualification." 456 U.S. 188, 195–96 (1982) (noting that "generalized assumptions of possible interest" are insufficient to conclude that hearing officers are biased). Here, Plaintiff has not identified a plausible source of actual bias or conflict of interest on the part of WPS or the hearing officer. Since Plaintiff bases its conflict of interest argument solely on the generalized assumption that WPS's interests are adverse to Plaintiff's because it is a private contractor, Plaintiff has failed to overcome

10

the presumption that WPS acted in an unbiased manner. Thus, the Secretary accurately rejected Plaintiff's conflict of interest claim.

**C. Due Process**

Lastly, Plaintiff contends that his due process rights were violated during the administrative revocation process because CMS did not hold a pre-revocation hearing. Accepting Plaintiff's argument that the revocation of his Medicare billing privileges deprived him of interests in property and liberty, due process required that Plaintiff be given notice and an opportunity to be heard. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005). The amount of due process required involves the consideration of three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

The Secretary concluded that Plaintiff received adequate notice that his billing privileges were being revoked. Plaintiff received a letter from WPS on March 15, 2008, notifying him that his billing privileges would be revoked effective April 15, 2008, and informing him that his revocation was based on 42 C.F.R. § 424.535. Although the letter improperly cited 42 C.F.R. § 424.535(3), enclosed within the letter was a copy of 42 C.F.R. § 424.535(a)(3), the applicable statute. The letter also notified Plaintiff that he could request reconsideration "by a carrier hearing officer," which "is a thorough, independent review of the initial determination and the entire body of evidence, including any new information submitted." Plaintiff requested reconsideration on May 9, 2008, and

on July 22, 2008, WPS again notified Plaintiff of the facts and legal rationale underlying the revocation decision. In light of this evidence, the Court finds that the Secretary reasonably concluded that Plaintiff received timely and adequate notice that his Medicare billing privileges were being revoked.

The Secretary also concluded that due process did not entitle Plaintiff to a pre-revocation hearing. The applicable regulatory scheme provided Plaintiff with full opportunities to present relevant evidence and contest the revocation of his Medicare enrollment billing privileges before (1) a WPS hearing officer, (2) an ALJ, and (3) the DAB. The Court agrees that the regulatory scheme provided Plaintiff with an adequate opportunity to be heard, and Plaintiff presents no authority holding that a pre-revocation hearing has been required under similar circumstances. While Plaintiff claims to have incurred harm to his livelihood and reputation, Plaintiff's interests were not of such a strength so as to require a pre-revocation hearing. After all, the revocation did not impair Plaintiff's ability to practice medicine and bill non-Medicare patients. Plaintiff also argues that the revocation impaired his reputation because he will now be viewed as untrustworthy among his patients, but the Court notes that Plaintiff's reputation for trustworthiness was sufficiently harmed when he pled guilty to the felony of Conspiracy to Defraud the United States. Given Plaintiff's guilty plea, and that the Secretary is given broad authority to interpret its own regulations, such as what offenses are detrimental to the Medicare program under 42 C.F.R. § 424.535(a)(3), the risk of an erroneous deprivation of Plaintiff's interests were minimal and additional procedural safeguards would have provided little probative value. Lastly, considering Plaintiff's prior dishonest dealings withe the federal government, the Secretary reasonably concluded that it was necessary to preserve the integrity of the Medicare program to revoke Plaintiff's billing privileges without a pre-

revocation hearing. Thus, the Court finds that due process did not entitle Plaintiff to a pre-revocation hearing.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment [dkt 18] is DENIED

IT IS FURTHER ORDERED that Defendants' motion for summary judgment [dkt 21] is GRANTED.

IT IS SO ORDERED.

                                        S/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated: March 25, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 25, 2011.

                                        S/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290